THE STATE v. J. H. MCBRAYER.*

*Criminal Intent—Liquor Dealer—Statutes—Physicians—Sales to Minors.*

1. A practicing physician, who keeps on hand intoxicating liquors for the purposes of sale or profit, is a " dealer " within the meaning of the statute (*The Code*, §1077,); and if he prescribe for a minor, knowing him to be such, any of said liquors as medicine, and thereupon sells, or gives them to him, he is guilty of a violation of the statute, notwithstanding he acted in good faith.

2. When a statute plainly forbids an act to be done, and it is done, the law conclusively implies the guilty intent, although the offender was honestly mistaken as to the nature of his act.

3. When the nature of the act is plainly made to depend upon the positive, wilful purpose to violate the law, the intent with which it was done will become an essential element of the offence.

4. The statute, Ch. 115, Laws 1876-'7, and Ch. 133, Laws 1873-'4, prohibiting the sale of liquors in the town of Shelby, are local, and do not affect the general law in respect of sales of liquors to minors.

(DAVIS, J., dissenting).

(*State* v. *Wray*, 72 N. C.. 253, and *State* v. *Wool*, 86 N. C., 708, distinguished ; *State* v. *Dickerson*, 1 Hay., 468 (407); *State* v. *Boyett*, 10 Ired., 336; *State* v. *Presnell*, 12 Ired., 103: *State* v. *Hart*, 6 Jones, 389, cited and approved).

This was a CRIMINAL ACTION, tried before *Graves, Judge,* at Fall Term, 1886, of CLEVELAND Superior Court.

The defendant was indicted under the statute for selling liquor to a minor. It was in evidence that the minor purchased one half pint of liquor from the defendant in the town of Shelby, in January or February, 1886; that the defendant was a regular licensed practicing physician and owned a drug-store in Shelby; that the minor called at the defendant's store and was laboring under a congestion of the

*The opinion of the Court was filed at last term, but by inadvertence was not published in the Reports of the Decisions of that term.—REPORTER.

lungs from a severe cold ; that the defendant gave him an examination and was satisfied that he needed the prescription, and prescribed whisky and sold to him a half pint; that at the time of the sale the defendant prescribed how it should be used, and the quantity. It was in evidence that the liquor was sold to the minor as a medicine, and for medical purposes only; that it was necessary for the minor that he should have the spirits, and that whisky was used by doctors as a medicine for such attacks. It was in evidence by the defendant that he invariably used whisky in such cases for his patients, and that he would not have sold it to the minor except for the fact that he honestly believed that it was necessary as a medicine, and that it was not sold or prescribed to the minor for any other purpose. The physician also testified that the minor's father and mother resided in South Carolina; that he had practiced in their family and knew that lung affections were hereditary in that family; that the minor, who was about 16 years of age, was working at a livery stable in Shelby and had been subject to much exposure.

The defendant introduced a statute regulating the sale of liquor in the town of Shelby and within two miles thereof, which was passed in 1873–'4, Laws 1873–'4, Chap. 133, re-enacted Chap. 115, Laws 1876–'7. This local act prohibited the sale of intoxicating liquors in the town of Shelby except by " practicing physicians and for medicinal purposes only."

The counsel for the defendant asked the Court to charge the Jury that if he was a regular licensed and practicing physician in the town of Shelby, and sold to the minor the liquor as testified to, and that he honestly believed that it was necessary for the minor to take the liquor as a remedy for his affection of the lungs, and that the defendant, after examination of the patient, prescribed and sold the liquor for medicinal purposes only, he would not be guilty, and that they must find a verdict for the defendant.

The Court refused to give these instructions, or any part thereof, but charged the jury that if the boy was a minor, and unmarried, and the defendant sold him a pint of liquor as testified by the witnesses, he would be guilty of a violation of the statute.

The defendant excepted to this charge.

Verdict of guilty and judgment thereon, from which the defendant appealed.

*The Attorney General* and *Mr. E. C. Smith,* for the State.
*Mr. John F. Hoke,* for the defendant.

MERRIMON, J.   We had occasion in *State* v. *Lawrence,* 97 N. C., 492, to construe the statute (*The Code,* §1077,) forbidding "*dealers* in intoxicating drinks or liquors" to sell or give the same in any quantity to unmarried minors, knowing them to be such, and we have held that the comprehensive, explicit and unqualified terms employed, and the purpose contemplated by it, excludes any exception arising by implication or allowable by interpretation.   It therefore follows that if such a dealer—that is, in the language of the statute, "if one who keeps on hand intoxicating drinks or liquors for the purpose of sale or profit," being a practicing physician—prescribes for such a minor, knowing him to be such, such drinks or liquors as a medicine as in his judgment the minor ought to take, and thereupon sells or gives him the same, he would be guilty of a violation of the statute. This is so, as we have said, because there is no exception to or limitation upon the *sweeping* terms of the statute, forbidding such sales and gifts.

But it is said, "can it be that a practicing physician shall not sell or give such drinks and liquors to his patients when they require them?"   Certainly not, if he is a *dealer* in them—otherwise he may do so.

A practicing physician who is such *dealer* is prohibited

from making such sales and gifts as certainly as other per-
:sons. It is suggested that he does not sell or give away such
intoxicants as a *beverage*, but as a *medicine.* But the statute
makes no such distinction. Why is none provided? Es-
pecially, why not in this statute, while such distinction is
provided in similar statutes, forbidding the sale of intoxicat-
ing liquors generally in certain prescribed localities, as in
the town of Shelby, where the sale in question was made
.and elsewhere? The striking omission was scarcely an in-
.advertance. It is not unreasonable to infer that it was in-
tended, and that by it the Legislature intended the more
.certainly to effectuate the purpose of the statute.

The counsel for the appellant pressed upon our attention
the case of *State* v. *Wray*, 72 N. C., 253, which declared that
a druggist might, in good faith, sell as a medicine, by direc-
.tion of a physician, spirituous liquors in a quantity less than
.a quart. That case, it seems to us, went to the extreme limit
.of the power of interpretation, but treating it as well war-
ranted, it does not apply here. It applied to a statute for-
.bidding generally the sale of intoxicating liquors by a
.measure less than one quart, and was based upon the views
that the statute was intended to prevent and suppress the
.abusive use of spirituous liquors generally and to enhance
the revenues of the State. But the statute under considera-
tion is different in its purpose and scope from that just
referred to. It is not so general—it is limited in its opera-
tion to a class, and is intended to protect a class of young
people of immature judgment and inexperience; and the
total absence of exceptive provisions tends strongly to con-
firm the view, that the intention was to cut off all oppor-
tunity for *dealers—all dealers* in intoxicating drinks and
liquors—to sell or give the same to them for any purpose.
The purpose is not to prevent such minors from having such
intoxicants for proper purposes at proper times, but to pre-
vent *dealers* in them from supplying them.

The decision of the Court in *State* v. *Wool*, 86' N. C., 708, is founded upon the same principle of interpretation as that in the case above cited, and what we have said applies with equal force to it.

That the defendant, in good faith, thought he had the right to sell the minor the spirituous liquors, did not excuse him from criminal liability. This could only affect the measure of punishment.

It is a mistaken notion that positive, wilful intent, as distinguished from a mere intent, to violate the criminal law, is an essential ingredient in every criminal offence, and that where there is the absence of such intent there is no offence; this is especially so as to statutory offences. When the statute plainly forbids an act to be done, and it is done by some person, the law implies conclusively the guilty intent, although the offender was honestly mistaken as to the meaning of the law he violates. When the language is plain and positive, and the offence is not made to depend upon the positive, wilful intent and purpose, nothing is left to interpretation.

It would be a very dangerous exercise of the power of Courts to interpret positive statutes so as, in effect, to interpolate into them exceptive provisions. If the Court could do so, there would be scarcely a limit beyond which it might not go, and thus make, instead of interpret, the law.

Hence, in *State* v. *Dickerson*, 1 Hay., 468 (407), where the defendant was indicted for extortion in demanding and receiving unlawful fees, he could not be excused upon the ground that he did so through mistake and bad advice. And also in *State* v. *Boyett*, 10 Ired., 336, where the defendant was charged with voting unlawfully, he was held to be guilty, although he honestly thought he had the right to vote, and had been so advised by an intelligent person supposed to be familiar with the law. In that case PEARSON, Judge, said: "The question, in effect, was, shall a man be

allowed, in excuse of a violation of the law, to prove that he was ignorant of the very law under which he professed to act and under which he claimed the privilege of voting? If he was not ignorant of the law, and that he cannot be heard to allege, he voted *knowingly* and, by necessary inference, *fraudulently.*" And likewise in *State* v. *Pressnell*, 12 Ired., 103, it was held that it is not a sufficient justification for a person who does a criminal act under a statute to show that he did not believe it was unlawful. In that case Chief Justice RUFFIN said: "It was said that when one believes he is not doing an unlawful thing, there is not the guilty mind necessary to constitute a crime. But this is not correct. When the act is unlawful and voluntary, the *quo animo* is inferred necessarily from the act." And so also in *State* v. *Hart*, 6 Jones, 389, it was again held that the defendant was guilty of unlawful voting, although he honestly thought he had the right to vote and had been so advised, RUFFIN, Judge, saying: "The defendant voluntarily gave an illegal vote, and necessarily the unlawful purpose attaches *prima facie* to the act. It is neither a justification nor an excuse for such an act, that other persons advised the party that it was lawful, and much less that other persons thought and believed it to be lawful. * * * He acted on his own mistaken or wilfully erroneous judgment, and must abide the consequences." *Ignorantia legis neminim excusat.*

The correctness of these decisions has not been seriously questioned, and decisions to the same effect, made in this and other States in large numbers, might be cited, some of them interpreting statutes more or less like that now under consideration. Whar. Cr. Law, §§2441, 2442, and numerous cases there cited; Bish. Stat. Cr., §§1019, 1020, 1023, and cases there cited.

It is only when the positive, wilful purpose to violate a criminal statute, as distinguished from a mere violation thereof, is made an essential ingredient of the offence, that

honest mistake and misapprehension excuses and saves the alleged offender from guilt.

The statute (Acts 1876–'77, ch. 115, 1873–'74, ch. 133,) prohibiting the sale of spirituous liquors in the contingency prescribed therein in the town of Shelby, does not modify or affect the statute (*The Code*, §1077,) forbidding the sale or gift of intoxicating drinks or liquors to minors as first above pointed out. The latter is a general public statute. The former is a local public statute, and there is nothing in it that, in terms or by implication, repeals or modifies the provisions of the general law, nor is there anything in the nature or purpose of the local statute that has such effect.

There is no error. Let this be certified to the Superior Court, according to law.

Affirmed.


DAVIS, J., (Dissenting).   It is with diffidence that I dissent from my senior brethren, but the facts in this case negative any purpose to violate the spirit and intent of the statute, and I cannot concur in the opinion that the defendant is guilty.

The *spirit* of the law is its life and substance, and the letter is but "the bark." As the spirit may be violated without violating the letter, so, "the letter of the law" may be broken without violating its spirit. It has often been held that evasions of the laws are violations—often the most criminal violations—of the law, and so it has been held that a violation of the "letter," when the spirit has not been violated, is no crime.

I regard the law in question as a most wholesome and just one, intended to protect the youth of the country from the evils of intemperance, with its attendant vices and crimes, and every violation of its intent and meaning—of its spirit and purpose—should be followed by its penalties.

The mischief and evil, the prevention of which was con-

templated and intended by the statute, was the corruption of youth—by giving or selling to them intoxicating drinks or liquors; it is this that the spirit and purpose of the law as well as its letter makes criminal; but when it appears, as is conceded in this case, that there was no purpose to violate the law, but a *bona fide* different purpose, that was to supply a medicine admitted to be necessary and proper for the youth for whom it was honestly prescribed, it "is sticking in the bark" to say that the accused is guilty.

For some maladies and poisons, and the bite of some reptiles and poisonous insects, spirituous liquor is a specific remedy; and in answer to the suggestion, that in such cases, if the person attacked should be an unmarried minor, he might have to die, because the druggist could not sell or give to him the absolutely necessary *medicine*, it was said that, in such cases, the *dealer* might give or sell it to some one for him. This would be an *evasion,* and if it would be no crime to *evade,* it would be no crime to give or sell.

In *State* v. *Wray,* 72 N. C., 254, it is said that spirituous liquor is an "essential medicine, frequently prescribed by physicians, and often used; and in this case it was bought in good faith as a medicine and was used as such. The letter of the law has been broken, but has the spirit of the law been violated?    *    *    *    *    In favor of defendants criminal statutes are both contracted and expanded. Now, unless this sale comes within the mischief which the statute was intended to suppress, the defendants are not guilty; for it is a principle of the common law that no one shall suffer criminally for an act in which the mind does not concur."

A similar construction has been placed upon other criminal statutes. The statutes against carrying concealed weapons (*The Code,* § 1005,) is as absolute and imperative as this, and yet in the case of the *State* v. *Gilbert,* 87 N. C., 527, indicted for carrying a pistol concealed, the fact being shown that there was no criminal purpose to violate the law, the Court

said: "It is true it will always be presumed to be a man's intention to do what in fact he does, and that he must contemplate the natural consequences of his conduct; but when the jury expressly find the contrary, and that, notwithstanding the act done, there was no criminal intention connected with it, that must put an end to the prosecution." This is in accord with the construction to be placed upon such statutes as deduced from a review of the decisions upon the subject, to be found in Bishop on Statutory Crimes, §§ 1019, 1020 and 1021: "We may presume," says he, "that the law makers had in mind the distinction between medicine and drink, and when they forbade the sale of a particular kind of "drink" or "liquor," they did not intend to prohibit the sale of *medicine* necessary to restore life, and restore the sick to health, even though the medicine should happen to be composed of the same ingredients as the drink."

I think it may be said to be a common-law rule of construction of criminal statutes, that when the act done is not *malum in se*, but is proper and necessary in itself, and is not within the mischief designed to be remedied by the statute, it is not criminal. This rule of construction applies to all criminal statutes, general in their terms. Bishop, § 230, sums up the result of the authorities in the simple statement "that whenever the thing done comes not within the mischief which evidently the statute was intended to suppress, though it comes within its words, the person doing the thing is not punishable. The case must come not only within the words of the statute, but also within its reason and spirit and the mischief it was intended to remedy," § 232; and for this he cites a long list of authorities. This seems to me the well settled and just rule of construction of statutes, and to which they must bend.

This common-law rule of construction gives full force and effect to the spirit of the statute, and controls the letter, and keeps it within the mischief to be remedied. "There is,"

says Bishop, " in perhaps all cases of statutory crime a greater or less mingling of common-law principles with the statutory words. Indeed, there is no place where the principles of the common law prevail, where statutory crime, pure and simple, and as an existence entirely separate from the common law, is known. The statute may be the strong swimmer that boasts of being moved by no current, and of possessing all force in its own arm ; still, around it in all its extent, and in all its parts, and constantly bearing it up, is the ever present arm of the common law."

I think the rule that "ignorance of the law excuseth not" has no application to this case, as it had to the cases of *State* v. *Dickerson*, 1 Hay., 468 ; *State* v. *Boyett*, 10 Ired., 336 ; *State* v. *Presnell*, 12 Ired., 103 ; *State* v. *Hart*, 6 Jones, 309.

It is conceded that the defendant was bound to know the law, and that the letter of the statute was broken; but if the sale was made, not as an "*intoxicating drink* or liquor," but in good faith as a medicine, prescribed by a physician as necessary to cure the sick, then it was not within the *mischief* and *contemplation* of the statute, and therefore not criminal and within its penalties ; and for this I think the cases of *State* v. *Wray* and *State* v. *Gilbert* are conclusive authorities.

It appearing in this case that there was no purpose to violate the spirit of the law, for the reasons given I do not think the defendant ought to be convicted.