THE STATE v. R. D. BROWN.

*Roads and Highways—Street — Municipal Ordinance — Evidence—Criminal Responsibility.*

1. The right of a traveller to go *extra viam* upon adjacent lands is confined to those cases of inevitable necessity or unavoidable accident, arising from recent causes producing temporary and impassable obstructions to the highway.

2. As a general rule, one cannot justify a violation of the criminal law upon the plea of necessity, except where the act was done in protection of his life, person or health.

3. Defendant being indicted for violation of a city ordinance prohibiting driving vehicles upon sidewalks, offered evidence to show that the street, on account of mud, was in such a condition that he could not drive a loaded wagon, with safety to its load, over it, except by going on an unpaved sidewalk, and that particular street was the only one available for his business; the defendant admitted that he knew the condition of the street before he started his wagon: *Held*, that these facts constituted no defence, and proof of them was properly rejected.

This was an INDICTMENT for a violation of a city ordinance, tried on appeal from the Mayor of Winston, at the Spring Term, 1891, of the Superior Court of FORSYTH County, before *Bynum, J.*

The ordinance imposed a penalty for driving or leading horses on a sidewalk, and it was admitted that the defend-

ant's driver, under his order, drove his wagon partly on a sidewalk for a distance of ninety feet along the street. The defendant relied upon necessity, growing out of the impassable condition of the streets on account of the mud for a number of yards, as a defence.

The defendant excepted to the refusal of the Court to permit him to prove that he could not drive a loaded wagon along the street without going on the sidewalk with safety to the load or his wagon. The Court permitted defendant's counsel to ask him, "If the condition of the street at that place was not of such dangerous character that the traveller's person or property would have been endangered unless he used the sidewalk or partially used the sidewalk." The defendant admitted that he knew the condition of the street before he started his loaded wagon along it, and in answer to the last question, said only " that the boxes of tobacco would have to have been unloaded, as the team could not pull it."

There was evidence tending to show that there was no other possible way from defendant's building to haul out his tobacco, except by the south street over which he hauled it, the street north of it being wholly impassable. The sidewalk where the defendant drove upon it was not paved.

The defendant excepted to the refusal of the Judge to charge that he was not guilty in driving upon the sidewalk to avert danger to his person or property, and to the refusal of the Court to admit testimony offered.

Motion for new trial. Appeal.

*The Attorney General*, for the State.
*Mr. C. Manly*, for defendant.

AVERY, J.: It is admitted to have been the well settled law in England, that where a highway became obstructed and impassable from temporary causes, a traveler might go *extra viam* upon the adjacent land without subjecting him-

self to liability in an action of trespass brought by the owner. 2 Bl. Com., 36; *Bullard* v. *Harrison*, 4 M. & S., 387, 393; *Taylor* v. *Whitehead*, 2 Douglass, 744–748. This extraordinary rule was subsequently recognized by the Courts of this country, and the right to do with impunity what would ordinarily subject a person to liability in an action for damages, was generally held to rest upon the doctrine of necessity. *Campbell* v. *Race*, 7 Cush. (Mass.), 408.

The right on the part of the traveller is, according to the definition of BIGELOW, C. J., "confined to those cases of inevitable necessity or unavoidable accident, arising from sudden and recent causes which have occasioned temporary and impassable obstructions in the highway." *Campbell* v. *Race, supra.*

When a traveller has notice of the existence of the obstruction, and can reach his destination with his vehicle by another route which is more circuitous but not unreasonably long, he will not be permitted, merely for the sake of convenience, to pass, without incurring liability in a civil action, by the more direct way over the land of an abutting proprietor. *Fandley* v. *City of Cincinnatti*, 2 Dis. (Ohio), 516. The objection that the rule licenses the taking of private property for public use without compensation is met by the argument that the grant of the easement in the highway carried with it the right in a case of supreme necessity to pass over adjacent land.

The principle has been heretofore invoked, so far as our investigations have extended, only for the purpose of avoiding responsibility for damages in civil actions. The rule is said to have originated in England at a time when there were no public officials who were liable to indictment or to respond in damages for permitting the highways to become impassable.

Where there is a town ordinance forbidding persons to lead or drive horses along the sidewalk, which is the portion

of the street intended for the use of pedestrians, and a violation of the ordinance is an indictable offence, and where at the same time the commissioners of the city are liable criminally for failure to keep the streets proper in passable condition for vehicles of all kinds, an individual who deliberately, and with full notice of the state of the street, loads his wagon and drives along it to the dangerous point, will not be allowed to evade punishment for violating the letter of the law, on the ground that it was absolutely necessary to do so in order to escape danger to his property which he has wilfully put in peril. Especially will this principle hold good in a case like that at bar where, in order to avert danger, the traveller insists that he may drive upon the sidewalk and make it impassable for foot passengers, to whose exclusive use it is by law devoted, and escape liability under an indictment on the plea of necessity, when he could have unloaded his tobacco even after his team was in the mud, and have moved the wagon back or forward. Pedestrians have rights that are intended to be protected by such ordinances, and among them that of carrying their wares as well as passing safely by the public foot-way. The man who transports his goods on wheels must, when the street proper becomes impassable, join the caravan of footmen till such time as those charged with the duty can be induced or driven to repair it, rather than rush his team over the sidewalk and render it also perilous or disagreeable for the larger number of persons for whose comfort and convenience the protective ordinance was passed, merely in order to ship his goods more rapidly. The fact that the footway had not been paved made it only more susceptible to injury from hauling heavily loaded wagons over it, and rendered it more important to pedestrians that the ordinance should be rigidly enforced. In our geographical location, where the climate is milder, carriages are not often subject to delay by immense blocks of snow and ice, suddenly deposited in highways, as

in the colder regions of the Northern and North-western States of this country, or in the higher latitude of England; and while our public roads are often rendered temporarily and for short distances impassable on account of sudden washes, no case involving the claim of right on the part of a traveller to go *extra viam* has hitherto arisen in this State. Mud rather than ice or snow is the common enemy of those who travel our highways on foot or in carriages; but it must be only in exceptional instances that mud or anything, except a sudden wash, renders highways absolutely impassable. It is usually held to be the duty of the traveller to remove brush or other slight obstructions to his passage along a public road, when he can do so with little trouble or delay, rather than go upon the premises of the adjacent owner. The law provides generally, as far as it is practicable, for the uninterrupted use by wagon and carriages of that portion of the highway intended as a passway for them; but it is the duty of the owners of such vehicles to beware, in the exercise of their own rights, not to infringe upon those of other citizens, just as the same limit is fixed by the law to the enjoyment of their own exclusive property. *Sic utere tuo ut non alieum laedas.*

But the particular question presented by this appeal is whether there were such circumstances shown, looking at any and every phase of the evidence, as would, if believed, have justified the violation of the criminal law on the ground of necessity. It is admitted that the defendant's conduct brought him within its letter; but it is contended that the evidence offered takes the case out of its spirit.

Whether the authorities of a town are guilty of nuisance in placing an actual obstruction upon the streets, or by reason of their failure to repair, they are indictable at common law, and usually under some statute also. Elliott on R. & S., p. 493; *State* v. *Wilson,* 107 N. C., 869; *The Code,* § 3803. Evidence that the defendant's teamster drove his team upon the

sidewalk, if believed, made a *prima facie* case of guilt, and it was incumbent on the defendant, if he relied upon the defence that it was necessary, "to show that it was done under circumstances that rendered it lawful," or excusable. *State* v. *Wray*, 72 N. C., 253. Wharton (C. L., § 90c), in treating of homicide through necessity, says: "But it must be remembered that necessity of this class must be strictly limited. It exists only when the act in question is necessary for the preservation of life, or the preservation of the life of relatives of the first degree." The same author (§ 90d) takes issue with writers who have maintained that the accused could not set up as a defence a necessity that was the result of his own culpable act. He limits the right of such wrongdoers to avail themselves of that defence when accused of homicide in extreme cases, such as that of one who carelessly sets fire to a house and runs over and crushes another in the attempt to escape the flames; or that of a thief who falls overboard while engaged in stealing fish from a boat, and in the struggle for life upsets the boat and causes another to be drowned.

The violation of the letter of the law has been excused in criminal cases generally on no other ground except that a human being was thereby saved from death or peril, or relieved from severe suffering, *State* v. *McBrayer*, 98 N. C., 619; *Randall* v. *Railroad*, 107 N. C., 753. In *State* v. *Wray*, *supra*, it was found as a fact that it was absolutely necessary for the safety of a patient that the druggist should furnish her brandy on the physician's certificate. The facts found, as a special verdict, established the necessity for administering it as a medicine, yet this Court in *State* v. *McBrayer*, *supra*, declared that the extreme limit to which necessity could be made available as a defence was marked in *State* v. *Wray*.

Wharton (§ 2441) maintains that in such cases nothing short of an exception in the statute would excuse a sale, even

to a sick person, in violation of the letter of the law.  But, accepting the doctrine laid down in *State* v. *Wray, supra,* as the true interpretation of the law, the defendant has failed to offer any testimony to show that he or his driver was in danger of death or bodily harm or injury to health which could not be averted except by driving the team over the sidewalk.  The admitted violation of the letter of the ordinance, therefore, could not have been declared excusable on the ground that the wagon or horses were in a position of peril, in which the defendant had knowingly and purposely placed them, and from which he could, according to his own statement, have relieved them by unloading the wagon and turning it and the team back or moving them forward.  In answer to the direct question, the defendant would not say that the person of himself or driver was in peril, from which neither could escape except by driving on the sidewalk.  On the contrary, he said the wagon and horses could not pass without unloading.  It was the duty of the city authorities to repair the portion of the streets intended for the passage of wagons, but their failure to do so did not justify the defendant, though it may have been his only route for transporting his tobacco to a warehouse or shipping point, in defying the law making it indictable to violate a city ordinance, and in disregarding the rights of pedestrians, protected by the penalty imposed under such by-law.  If the law were as contended for the defendant, it might indeed be possible to drive a wagon, if not a coach, through many criminal laws and statutes made to protect the premises of landowners from unnecessary invasion.  We must not be understood as holding that when there is no liability to indictment for going *extra viam,* there may not be instances where the highways are temporarily rendered impassable by the mud, and where all of the circumstances may be such that the abutting proprietor cannot recover in an action brought

against one who passes out of the public road and over his premises far enough to avoid the dangerous point.

In the case at bar, if the Judge below erred it was in stating the law more favorably to the defendant than the testimony in any aspect justified him in doing. There was no testimony that the person of the defendant was put in peril, and no necessity for submitting that question to the jury.

The motion for a new trial is refused, and the judgment affirmed.

Affirmed.