STATE OF NORTH CAROLINA v. JULE W. THOMAS, JR., PAMELA
SCHUFFERT, SHEILA HIGGINS, MARY E. MAYHEW, TERRY W. TURNER,
COLIN HUDSON, HELEN L. GORDON, CHARLES ERIK ANDREWS, ALAN
D. BRAGWELL

No. 9028SC744

(Filed 18 June 1991)

**Criminal Law § 34 (NCI4th)— trespass at abortion clinic—defense
of necessity—requirements not met**

> The trial court did not err in a prosecution arising from
> a sit-in at a clinic offering abortions by refusing to instruct
> the jury on the defense of necessity. While the defense of
> necessity remains viable, it is unavailable where the legislature
> has acted to preclude the defense by making a clear and
> deliberate choice regarding the values at issue. The General
> Assembly has made a clear and deliberate choice by making
> abortions performed in accordance with statutory provisions
> lawful; since there was no evidence that the clinic was perform-
> ing or was about to perform illegal abortions, the evil which
> the defendants sought to avoid was nonexistent and the possibil-
> ity of the defense foreclosed.

**Am Jur 2d, Trespass § 42.**

APPEAL by defendants from judgments entered 14 December
1989 in BUNCOMBE County Superior Court by *Judge Shirley L.
Fulton.* Heard in the Court of Appeals 23 January 1991.

*Attorney General Lacy H. Thornburg, by Assistant Attorney
General Ellen B. Scouten, for the State.*

*Charles R. Brewer for defendants-appellants.*

WYNN, Judge.

On the morning of 22 July 1990, the defendants, along with
others, staged a "sit-in" on the premises of the Western Carolina
Medical Clinic in Buncombe County, North Carolina. The clinic
offers complete gynecological services to women, including abortion
services. In spite of conspicuous signs posted on the premises in-
dicating "No Trespassing, Clinic Patients Only," the defendants
proceeded onto the premises and blocked the entrances to the
clinic by sitting in front of them. Shortly thereafter, the clinic's

director, Ms. Joni Ellis, told the defendants and others taking part in the "sit-in" that she was authorized by the clinic to demand that they leave the premises. Ellis repeated the demand that they leave eight times. When the defendants failed to leave the premises, they were arrested.

Prior to trial, each of the defendants stipulated that they were on the premises of the clinic on the day in question and that they remained there after being instructed to leave. However, they denied having possessed criminal intent. In a consolidated trial, each defendant was convicted of violating North Carolina General Statutes section 14-159.13 (second degree trespass). The defendants thereafter filed a joint notice of appeal pursuant to North Carolina Rule of Appellate Procedure 5.

---

I

In this case, we are called upon to determine whether the defense of "necessity" is available to individuals who commit the crime of trespass in an effort to "save the lives" of fetuses from abortion. The defendants contend that the trial court committed reversible error by refusing to instruct the jury on the "necessity" defense and by excluding certain testimony and other evidence which tended to support the defense. Admittedly, this issue is one of first impression in this State. For the reasons which follow, we are constrained to hold that the defense of "necessity" is inapplicable to the facts of this case.

Under the "necessity" defense, " '[a] person is excused from criminal liability if he acts under a duress of circumstances to protect life or limb or health in a reasonable manner and with no other acceptable choice.' " *State v. Gainey*, 84 N.C. App. 107, 110, 351 S.E.2d 819, 820 (1987) (quoting Black's Law Dictionary 929 (rev. 5th ed. 1979) ). The rationale behind the defense is based upon the public policy that "the law ought to promote the achievement of higher values at the expense of lesser values, and [that] sometimes the greater good for society will be accomplished by violating the literal language of the criminal law." W. LaFave & A. Scott, Handbook on Criminal Law § 50, at 382 (1972). "[I]f the harm which will result from compliance with the law is greater than that which will result from violation of it, [a person] is justified in violating it." *Id.* at 381.

In *Gainey, supra,* we noted in dicta that "the defense of necessity has not been considered in North Carolina cases thus far." 84 N.C. App. at 110, 351 S.E.2d at 820. Upon reexamination of this issue in greater depth, we acknowledge that in fact several early decisions of the North Carolina Supreme Court appear to have recognized "necessity" as a defense to criminal prosecutions. In *State v. Wray,* 72 N.C. 253 (1873), a druggist unlawfully sold spirituous liquors for medicinal purposes at the direction of a physician. The Court held that the druggist was not indictable because the liquor was sold "in good faith, and after the exercise of due caution as to its necessity as a medicine." 72 N.C. at 255. In *State v. Brown,* 109 N.C. 802, 13 S.E. 940 (1891), the Court pointed out that it was well settled law that where a highway became impassable, a traveler might go *extra viam* upon the adjacent land without subjecting himself to an action for trespass. "This extraordinary rule," Justice Avery wrote, "was subsequently recognized by the courts of this country, and the right to do with impunity what would ordinarily subject a person to liability in an action for damages, was generally held to rest upon the doctrine of necessity." 109 N.C. at 803, 13 S.E. at 941 (citations omitted). However, the Court declined to apply the doctrine of necessity in that case where it was shown that the defendant had trespassed for his personal convenience and noted that in previous cases, the Court had limited the application of the "necessity" defense to instances where "a human being was thereby saved from death or peril, or relieved from severe suffering." *Id.* at 806, 13 S.E. at 942 (citing *State v. Brayer,* 98 N.C. 619, 2 S.E. 755 (1886); *see also Randall v. Richmond and Danville R.R.,* 107 N.C. 748, 12 S.E. 605 (1890); *State v. Wray, supra.*). In *State v. Southern Railway Co.,* 119 N.C. 814, 25 S.E. 862 (1896), the Court reviewed the defendant's conviction for violating a statute which prohibited the running of a train after 9:00 a.m. on Sundays, and stated: "If the defense relied upon was that it was necessary to run after the hour fixed as the limit by statute in order to preserve the health or to save the lives of the crew . . . , or relieve them from suffering, it was incumbent on the defendant to show to the satisfaction of the jury that the act was done under the stress of such necessity in order to excuse it as not in violation of the spirit though in conflict with the letter of the law." 119 N.C. at 821, 25 S.E. at 862.

Inasmuch as the defense of "necessity" has not been expressly abolished in this State, we find that it indeed remains viable; however,

we conclude that the requirements for its invocation have not been met under the facts of this case.

It is often said that the necessity defense was not intended to excuse criminal activity by those who disagree with the decisions and policies of the lawmaking branches of government. 22 C.J.S. *Criminal Law* § 51 (1989). As such, the defense is unavailable where the legislature has acted to preclude the defense by making a clear and deliberate choice regarding the values at issue. *Id.* at § 50.

Recent cases in other jurisdictions follow this line of reasoning. In *Gaetano v. United States*, 406 A.2d 1291 (D.C. App. 1979), the court was confronted with the same argument presented here — that because abortion terminates life, one is entitled to go onto the property of the abortion clinic and prevent abortions. The *Gaetano* court concluded that the "necessity" defense did not apply, and held that the right to be free from criminal interference prevailed over the trespassers' illegal actions. In *National Organization for Women v. Operation Rescue*, 914 F.2d 582 (4th Cir. 1990), the Fourth Circuit affirmed the grant of an injunction which prohibited the defendants in that case from trespassing on the premises of an abortion clinic and reasoned that the activities of the trespassers "in furtherance of their beliefs had crossed the line from persuasion into coercion and operated to deny the exercise of rights protected by law." 914 F.2d at 585.

In the instant case, the defendants contend that it was "necessary" for them to commit the crime of trespass in order to avoid the greater "evil" of death by abortion. They argue that by violating the literal terms of N.C. Gen. Stat. § 14-159.13, they were able to promote a higher value than the value promoted by the trespassing statute.

In our opinion, the North Carolina General Assembly has made a "clear and deliberate choice" regarding the competing values at issue by choosing to make those abortions performed in accordance with the provisions of N.C. Gen. Stat. § 14-45.1 lawful. Since there was no evidence at the defendants' trial that the clinic was performing or about to perform illegal abortions, it is implicit that the "evil" which the defendants sought to avoid by blocking the clinic's entrances was nonexistent. The nonexistence of an "evil" to avoid foreclosed the possibility of a defense based upon necessity. Accordingly, we hold that there was no error in the trial court's refusing to instruct the jury on the defense of necessity.

We have examined the defendants' remaining assignments of error and find them also to be without merit. For the reasons set forth above, we find no error in the defendants' trial for second degree trespass.

No error.

Judges PHILLIPS and EAGLES concur.