STATE OF NORTH CAROLINA v. MILAS KENNEDY HUDGINS, DEFENDANT

No. COA03-1485

(Filed 4 January 2005)

1. **Criminal Law— defenses—necessity—driving while impaired**

An instruction on the defense of necessity should have been given in a DWI trial. The defense remains available even though DWI is a strict liability offense, and a trial judge is not relieved of the duty to give a correct instruction, there being evidence to support it, merely because the request was not altogether correct. There was substantial evidence of the defense in that defendant said he jumped behind the wheel of the moving truck and steered it to prevent collisions with another vehicle and a house and injuries to others. Credibility is for the jury.

2. **Evidence— prior crimes or bad acts—opportunity to stipulate—use despite stipulation**

In an action reversed on other grounds, the trial court erred by introducing an exhibit listing defendant's prior convictions before arraigning him on an habitual DWI charge and giving him an opportunity to stipulate to the prior convictions. Introducing the prior convictions on the charge of driving with a revoked license was also error; the State offered no justification for admission of the prior convictions in addition to license suspensions (to which defendant had stipulated).

Appeal by defendant from judgments entered 4 June 2003 by Judge Zoro J. Guice, Jr. in Yancey County Superior Court. Heard in the Court of Appeals 17 June 2004.

**STATE v. HUDGINS**

[167 N.C. App. 705 (2005)]

*Attorney General Roy Cooper, by Special Deputy Attorney General Hal F. Askins and Assistant Attorney General Patricia A. Duffy, for the State.*

*L. Jayne Stowers for defendant-appellant.*

GEER, Judge.

Defendant Milas Kennedy Hudgins appeals from his conviction of habitual driving while impaired and driving while license revoked. Because the evidence at trial supported an instruction on the defense of necessity, we hold that the trial court erred in failing to give such an instruction. We accordingly reverse defendant's convictions and remand for a new trial.

### Facts

The State's evidence tended to show the following. In the early evening hours on 3 September 2002, Joe Austin and a friend were standing next to Austin's house when they heard "something coming off the hill real fast" and saw a white Toyota pickup truck barreling down a steep hill behind Austin's house. The Toyota hit an old truck cab that Austin had parked on the hill and another vehicle parked in front of the house and came to rest in Austin's driveway. Austin ran to the truck and saw defendant lying on top of Benny Maney on the floorboard with defendant on the driver's side and Maney on the passenger side. Austin testified that the truck was still running, and his friend reached in and turned it off. Austin ran to his house and told his wife to call an ambulance. About fifteen minutes later, before the ambulance arrived, defendant got out of the truck and started walking toward his house.

When Trooper Rocky Dietz of the North Carolina Highway Patrol arrived, Austin told him that defendant had left to walk to his house. Dietz went to defendant's house, where defendant answered the door. Dietz noticed that defendant had a strong odor of alcohol coming from his person. Dietz asked defendant if he had been in a motor vehicle accident, and defendant replied that he had not, but agreed to accompany Dietz to the accident scene. Dietz placed defendant in his patrol car and administered *Miranda* warnings.

At the accident scene, Austin identified defendant as the person he had seen in the driver's seat of the truck, and defendant apologized to Austin for what had happened. Dietz placed defendant under arrest and transported him to the Yancey County Sheriff's

Department, where he informed defendant of his Intoxilyzer rights and administered an Intoxilyzer test. The test indicated that defendant had a breath alcohol concentration of .26.

Toward the end of the State's case-in-chief, the trial court admitted into evidence State's Exhibit 6, consisting of defendant's record of convictions for violations of motor vehicle laws, a notice of an alcohol-related suspension of defendant's North Carolina driver's license, and defendant's DMV driver's record. Following admission of this evidence, defendant was arraigned outside the presence of the jury on the charge of habitual driving while impaired. Defendant then admitted having three prior convictions involving impaired driving within the past seven years and confirmed that he had signed a stipulation that his license was revoked on the date of the accident. The signed stipulation was admitted into evidence as State's Exhibit 7. At that point, the State rested.

Defendant offered evidence that he began drinking at approximately 1:00 p.m. on 3 September 2002 and drank six or seven beers over the course of the afternoon. His friend Benny Maney picked him up in a white Toyota pickup truck to take him to Maney's house for supper. Denise Sturgill, the fiancée of defendant's brother, testified that she saw defendant get into the passenger side of Maney's truck. According to defendant, he was still riding as a passenger when the two men stopped on the side of the road to examine a dead tree and decide how best to cut it down for wood. Maney's truck was parked on the unpaved shoulder of the road, facing traffic. Defendant looked back and saw that the truck was rolling. He ran to the truck, jumped in the passenger door, slid over to the driver's side, and unsuccessfully tried to stop the truck by pumping the brakes. Maney followed through the passenger side and pulled the emergency brake, but the truck just rolled faster. Defendant testified that the truck was traveling on the wrong side of the road with defendant attempting to steer although the truck's power steering was not working. As they approached a sharp curve, defendant saw an oncoming car and steered the truck across the road to the opposite bank. According to defendant, the truck went over an embankment, then hit Austin's truck cab and a parked car and headed straight towards Austin's house. Defendant testified that he "tried to do the best [he] could to keep from hitting that house below [them]." The truck came to rest in Austin's driveway. Defendant testified that had he not jumped in the truck and ultimately steered it down the driveway, it would "have went right through [the] house."

Defendant "busted [his] head over the windshield coming down through there" and "was kind of addled." After the ambulance came and took Maney to the hospital, defendant got out and waited a time for the state trooper to come, then returned to his house. Trooper Dietz arrived about ten minutes later.

The jury convicted defendant of driving while impaired ("DWI") and driving while his license was revoked ("DWLR"), but found him not guilty of displaying a fictitious license plate. He was sentenced to 120 days imprisonment on the DWLR conviction and 19 to 23 months for a habitual DWI conviction based on his stipulation to the prior DWIs. From his convictions and sentences, defendant appealed to this Court.

I

[1] At trial, defendant requested the following jury instruction on the defense of necessity:

> I instruct you that North Carolina recognizes the defense of "necessity." A person is excused from criminal liability if he acts under a duress of circumstances to prevent some serious event from happening, and if he has no other acceptable choice. The law ought to promote the achievement of higher values at the expense of lesser values and sometimes the greater good for society will be accomplished by violating the literal language of the criminal law. If you find that [defendant] had no other acceptable way in which to prevent possible injury to occupants and property damage and only drove to steer the truck away from houses, the defense of necessity requires you to find him not guilty.

Defendant contends that it was reversible error for the trial court to refuse to give his requested instruction on the defense of necessity.

"A trial court must give a requested instruction if it is a correct statement of the law and is supported by the evidence." *State v. Haywood*, 144 N.C. App. 223, 234, 550 S.E.2d 38, 45, *appeal dismissed and disc. review denied*, 354 N.C. 72, 553 S.E.2d 206 (2001). Even in the absence of a request, "[f]ailure to instruct upon a substantive or 'material' feature of the evidence and the law applicable thereto will result in reversible error . . . ." *State v. Ward*, 300 N.C. 150, 155, 266 S.E.2d 581, 585 (1980). Any defense raised by the evidence is deemed a substantial feature of the case and requires an instruction. *State v. Smarr*, 146 N.C. App. 44, 54, 551 S.E.2d 881, 888 (2001), *disc. review denied*, 355 N.C. 291, 561 S.E.2d 500 (2002).

For a jury instruction to be required on a particular defense, there must be substantial evidence of each element of the defense when "the evidence [is] viewed in the light most favorable to the defendant . . . ." *State v. Ferguson*, 140 N.C. App. 699, 706, 538 S.E.2d 217, 222 (2000), *disc. review denied*, 353 N.C. 386, 547 S.E.2d 25 (2001). "Substantial evidence" is evidence that a reasonable person would find sufficient to support a conclusion. *State v. Vause*, 328 N.C. 231, 236, 400 S.E.2d 57, 61 (1991). Whether the evidence presented constitutes "substantial evidence" is a question of law. *State v. Earnhardt*, 307 N.C. 62, 66, 296 S.E.2d 649, 652 (1982).

A. Availability of Necessity Defense in DWI Prosecution

As an initial matter, the State asserts that the defense of necessity is inapplicable to a DWI prosecution, arguing that DWI is a strict liability offense to which there are no common law defenses.[1] The only case the State cites for this proposition, *State v. Rose*, 312 N.C. 441, 323 S.E.2d 339 (1984), involved a challenge that the statute was unconstitutionally vague, *id.* at 442, 323 S.E.2d at 340, and fails to support the State's argument. The State also points to N.C. Gen. Stat. § 20-138.1(b) (2003), which provides that "[t]he fact that a person charged with violating this section is or has been legally entitled to use alcohol or a drug is not a defense to a charge under this section." N.C. Gen. Stat. § 20-138.1(b). This provision does not establish a strict liability offense; it simply provides that legal use of alcohol or drugs does not justify driving while impaired.

The State's argument cannot be reconciled with decisions of this Court indicating that common law defenses are available in DWI prosecutions. This Court recently held that "[i]n appropriate factual circumstances, the defense of entrapment is available in a DWI trial." *State v. Redmon*, 164 N.C. App. 658, 663, 596 S.E.2d 854, 858 (2004) (remanding for new trial for failure to instruct on defense of entrapment). This Court has also implicitly acknowledged that the defense of duress would be appropriate in a DWI trial. *See State v. Cooke*, 94 N.C. App. 386, 387, 380 S.E.2d 382, 382-83 (emphasis omitted) ("The trial court was correct in refusing to instruct the jury on the defense of coercion, compulsion or duress as there was no evidence that defendant faced threatening conduct of any kind at the time the officer saw him driving while intoxicated."), *disc. review denied*, 325 N.C. 433, 384 S.E.2d 542 (1989).

---

1. The State does not contend that the defense is unavailable in a DWLR prosecution.

Moreover, courts in other jurisdictions have specifically held that the defense of necessity is available in a DWI prosecution. *See, e.g.*, *People v. Pena*, 149 Cal. App. 3d Supp. 14, 22, 197 Cal. Rptr. 264, 269 (1983) (duress/necessity defense was available to a defendant charged with misdemeanor driving under the influence); *Stodghill v. State*, 881 So. 2d 885, 889 (Miss. Ct. App.) ("[Defendant's] decision to drive after drinking may be excused as necessary."), *cert. denied*, 883 So. 2d 1180 (2004); *State v. Shotton*, 142 Vt. 558, 562, 458 A.2d 1105, 1107 (1983) (in DWI prosecution, trial court erred in not instructing the jury on the defense of necessity). We likewise hold that the defense of necessity is available in a DWI prosecution.

B. The Need for a Jury Instruction on Necessity

This Court has explained, with respect to the defense of necessity, that " '[a] person is excused from criminal liability if he acts under a duress of circumstances to protect life or limb or health in a reasonable manner and with no other acceptable choice.' " *State v. Thomas*, 103 N.C. App. 264, 265, 405 S.E.2d 214, 215 (1991) (quoting *State v. Gainey*, 84 N.C. App. 107, 110, 351 S.E.2d 819, 820 (1987)), *disc. review denied*, 329 N.C. 792, 408 S.E.2d 528 (1991). Our Supreme Court long ago restricted the necessity defense to situations where "a human being was thereby saved from death or peril, or relieved from severe suffering." *State v. Brown*, 109 N.C. 802, 807, 13 S.E. 940, 942 (1891).

Because of this limitation on the defense, defendant's requested instruction was not a correct statement of the law to the extent it suggested that the defense was available for attempts to prevent "serious events" or possible property damage. A trial judge is not, however, "relieved of his duty to give a correct . . . instruction, there being evidence to support it, merely because defendant's request was not altogether correct." *State v. White*, 288 N.C. 44, 48, 215 S.E.2d 557, 560 (1975). *See also State v. Black*, 34 N.C. App. 606, 608, 239 S.E.2d 276, 277 (1977) ("[T]he trial judge is not relieved of his duty to give a correct instruction merely because defendant's request was not altogether correct."), *disc. review denied*, 294 N.C. 362, 242 S.E.2d 632 (1978).

The question before this Court is, therefore, whether defendant presented substantial evidence to support the defense of necessity. A defendant must prove three elements to establish the defense of necessity: (1) reasonable action, (2) taken to protect life, limb, or

STATE v. HUDGINS

[167 N.C. App. 705 (2005)]

health of a person, and (3) no other acceptable choices available. *Thomas*, 103 N.C. App. at 265, 405 S.E.2d at 215. In this case, defendant offered evidence that he jumped into the moving truck and steered it to prevent the truck from hitting another car or Austin's house and harming someone.

Although the State argues that defendant's testimony was "an elaborate fabrication," that argument presents a question of credibility that is solely within the purview of the jury. "All defenses presented by the defendant's evidence are substantial features of the case, even if that evidence contains discrepancies or is contradicted by evidence from the state. This rule reflects the principle in our jurisprudence that it is the jury, not the judge, that weighs the evidence." *State v. Norman*, 324 N.C. 253, 267, 378 S.E.2d 8, 17 (1989) (internal citation omitted).

The State also appears to argue that there was only a risk of property damage, rendering the defense inapplicable. Defendant's evidence, if believed, presented the prospect—in the absence of defendant's actions—of a truck barreling down a steep hill in the wrong lane of a public road, creating a substantial risk of physical harm to other drivers or the occupants of the nearby house. The fact that defendant and Maney were themselves safely out of harm's way, as the State argues, is irrelevant if the jury believed that defendant's actions were necessary to protect others. *See State v. S. Ry. Co.*, 119 N.C. 814, 821, 25 S.E. 862 (1896) (recognizing that a necessity defense may be available where "it was necessary . . . in order to preserve the health or to save the lives of the crew . . ., or relieve them from suffering"); *Haywood*, 144 N.C. App. at 234-35, 550 S.E.2d at 45 (instruction on necessity proper where defendant testified that he had participated in sexual assaults to prevent the other defendant from hurting the victim).

Whether jumping into the truck to attempt to stop the vehicle was reasonable under the circumstances and whether defendant had any other acceptable options were questions for the jury. The State argues that because Maney could have jumped into the truck, there was no need for defendant to get behind the wheel. It was, however, up to the jury to decide whether the situation involved a split-second decision in an emergency situation that rendered defendant's actions reasonable and necessary.

In sum, because the record contains substantial evidence of each element of the necessity defense, the trial court should have

instructed the jury on that defense. Failure to instruct on a defense raised by the evidence is reversible error. *Ward*, 300 N.C. at 155, 266 S.E.2d at 585. Accordingly, defendant is entitled to a new trial.

II

[2] Defendant also contends that admission of State's Exhibit 6 during the State's case-in-chief violated N.C. Gen. Stat. § 15A-928(c)(1) (2003), as well as Rules 402 and 403 of our Rules of Evidence. We address defendant's argument because of the possibility of repetition on retrial.

N.C. Gen. Stat. § 15A-928 (2003) governs the method of proof of previous convictions in superior court when the fact that the defendant has been previously convicted of an offense raises an offense of lower grade to one of higher grade and thereby becomes an element of the latter. It applies to prosecutions for habitual DWI, *State v. Scott*, 356 N.C. 591, 593, 573 S.E.2d 866, 867 (2002), and provides:

> (c) After commencement of the trial and before the close of the State's case, the judge in the absence of the jury must arraign the defendant upon the special indictment or information, and must advise him that he may admit the previous conviction alleged, deny it, or remain silent. Depending upon the defendant's response, the trial of the case must then proceed as follows:
>
> > (1) *If the defendant admits the previous conviction*, that element of the offense charged in the indictment or information is established, *no evidence in support thereof may be adduced by the State*, and the judge must submit the case to the jury without reference thereto and as if the fact of such previous conviction were not an element of the offense.

N.C. Gen. Stat. § 15A-928 (emphasis added). "The purpose of this procedure is to afford the defendant an opportunity to admit the prior convictions which are an element of the offense and prevent the State from presenting evidence of these convictions before the jury." *State v. Burch*, 160 N.C. App. 394, 397, 585 S.E.2d 461, 463 (2003).

In this case, the trial court admitted State's Exhibit 6, listing defendant's prior convictions, before arraigning defendant on the habitual DWI charge and giving him an opportunity to stipulate to those prior convictions. This procedure contravened the purpose of

N.C. Gen. Stat. § 15A-928(c) to "insure that the defendant is informed of the previous convictions the State intends to use and is given a fair opportunity to either admit or deny them or remain silent." *State v. Jernigan*, 118 N.C. App. 240, 244, 455 S.E.2d 163, 166 (1995).

With respect to the DWLR charge, defendant argues that because defendant signed a stipulation that his license was revoked on the date of the offense and that he knew his license had been revoked, the admission of State's Exhibit 6 violated Rules 402 and 403 of our Rules of Evidence. As a leading commentator has observed, "a stipulation or admission by the defendant cannot limit the State's *right* to prove all essential elements of its theory of the case." 2 Kenneth S. Broun, *Brandis and Broun on North Carolina Evidence* § 198 (6th ed. 2004). *See also State v. Jackson*, 139 N.C. App. 721, 732, 535 S.E.2d 48, 55 (2000) (the trial court's decision to allow evidence of defendant's prior felony conviction, notwithstanding defendant's tendered stipulation, did not violate Rule 403), *rev'd in part on other grounds*, 353 N.C. 495, 546 S.E.2d 570 (2001). Nevertheless, the State offers no justification for admission of defendant's prior convictions, as opposed to just the license suspension, on the DWLR charge.

Due to our disposition of this case, we need not consider whether the jury "probably would have reached a different verdict" had State's Exhibit 6 not been admitted. *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986). Upon retrial, however, these errors should be avoided. We decline to address defendant's remaining contentions on appeal since we believe it is unlikely that any errors that occurred will be repeated.

New trial.

Judges HUDSON and THORNBURG concur.

Judge THORNBURG concurred prior to 31 December 2004.