An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1236

NORTH CAROLINA COURT OF APPEALS

Filed: 20 May 2014

STATE OF NORTH CAROLINA

v.                                    New Hanover County
                                      No. 12 CRS 52513
TRACY LYNN KAPEC

Appeal by defendant from judgment entered 23 July 2013 by Judge W. Allen Cobb, Jr., in New Hanover County Superior Court. Heard in the Court of Appeals 4 March 2014.

> *Attorney General Roy Cooper by Special Deputy Attorney General Neil Dalton for the State.*
>
> *Richard J. Costanza for defendant-appellant.*

STEELMAN, Judge.

Where defendant presented evidence of all the elements of the defense of necessity, the trial court erred in denying defendant's request for a jury instruction concerning necessity as a defense to the charge of impaired driving.

## I. Factual and Procedural Background.

On 15 March 2012 Carolina Beach Police Officer James Mobley was patrolling the northern part of Carolina Beach. At around 2:30 a.m., Officer Mobley was dispatched to 1216 Canal Drive in response to a call from Jesse Cayson, reporting that Tracy Lynn Kapec (defendant) was impaired and had left the residence operating a motor vehicle. Officer Mobley drove in the direction indicated by Mr. Cayson.

A short time later, Officer Mobley encountered defendant stopped at an intersection about three blocks from Mr. Cayson's home. He activated his blue lights. When defendant did not respond, he activated his siren. Defendant pulled into a parking lot about two and a half blocks from where Officer Mobley first activated his blue lights. After defendant stopped, she started to exit her vehicle. Officer Mobley saw that defendant's gait was unsteady and directed her to return to her vehicle. Officer Mobley "noticed she had red glassy eyes, a strong alcoholic beverage [odor] coming from her breath and mildly slurred speech." Defendant was unable to produce her driver's license or registration. She was crying and appeared upset, and told Officer Mobley "that she had had a few drinks but did not want to be driving" and that "the reason she was driving is because she wanted to get away from [Mr. Cayson]."

Officer Mobley took defendant into custody. The chemical analysis performed at the police station showed that defendant had a .17 blood alcohol level. Defendant was arrested for driving while impaired and driving without a license. On 18 February 2013 she was tried in district court, where she was found not responsible for the infraction of not having an operator's license, but was convicted of impaired driving. Defendant appealed the conviction to Superior Court, and was tried at the 22 July 2013 session of Criminal Superior Court for New Hanover County. At trial, the State presented testimony from Officer Mobley. Defendant offered testimony from several witnesses, which is summarized below.

Officer Steven Baize had previously responded to domestic violence calls involving Mr. Cayson, whom he described as a large man. At about 2:45 a.m. on 24 February 2012, about three weeks before defendant was arrested, Officer Baize responded to a call regarding an assault on defendant by Mr. Cayson. When he arrived on Canal Street, defendant was "walking down the street, her shirt was visibly ripped and torn," and she "was crying and upset" and walking briskly as if "trying to get somewhere quick." Defendant did not want to press charges and Officer Baize observed that she was "obviously scared of [Mr. Cayson]" "throughout the whole [encounter.]" Officer Baize described

another incident in which defendant "was staying with a friend off Carolina Beach Avenue" and "had her vehicle parked at her friend's house," when she and the friend reported "[Mr. Cayson] coming up, throwing a brick through the sliding glass door of that residence and also ripping the top on her convertible that she had at the time, and I believe he keyed her car as well and did lots of damage to the vehicle."

Defendant testified that she had separated from her husband in November 2011 and moved from Winston-Salem to Carolina Beach, where she rented a house from a friend, Michelle Steele. She met Mr. Cayson after she moved to Carolina Beach, and began a dating relationship. Initially, Mr. Cayson "seemed to be a kind person, a nice person" but after several months defendant "found out . . . he wasn't really who he portrayed himself to be[.]" Mr. Cayson used cocaine and alcohol and underwent a personality change when he was intoxicated. His behavior was "okay until he would have a few drinks or some other substance and then he would just totally turn into someone else and just get angry and violent." Mr. Cayson was also "very jealous."

On one occasion, defendant was in a parking lot when Mr. Cayson "came rushing up and shoved [her] into the car" and she "hit the side of the windshield[.]" Prior to this incident, Mr. Cayson had been drinking and using cocaine. On other occasions,

Mr. Cayson had "thrown [defendant] out the back door of his condo onto the deck." On 24 February 2012 defendant and Mr. Cayson were at his residence and Mr. Cayson became angry at defendant. When defendant tried to gather her belongings and leave, Mr. Cayson "took [her] by the throat with his right hand and threw [her] down on the bed," and then "picked [her] back up off the bed with [her] shirt and ripped it off and threw [her] in the floor and was kicking [her,]" after which he "threw [her] out the back door." Defendant called 911, and Officer Baize responded to the call. The next day, defendant filed "a police report," but she was scared to press charges, because Mr. Cayson had told her that he "was on probation for stealing a van" and that if she caused him trouble, she "would be sorry" because "he wasn't going to go to jail over [her]."

Mr. Cayson was never violent towards defendant when he was sober, but when he drank alcohol, he became hostile and abusive. Defendant learned "the warning signs that . . . another assault was imminent," in that Mr. Cayson "would start getting loud, start yelling" and "his whole face changed, so his expressions let [her] know that it was coming." He was more likely to become violent if defendant spoke with another man, "whether it be a friend or just a stranger just trying to be friendly."

On the night of her arrest, defendant went out with Mr. Cayson and two of his friends. During the evening, she drank beer and became "very intoxicated." Later, defendant and Mr. Cayson were at his residence, sitting outside on the steps. Mr. Cayson became angry and defendant observed "the look on his face and his demeanor changed and his voice raised," which were warning signs of an impending assault. Defendant became "nervous about what could happen" and told Mr. Cayson that she "wanted to leave" but he stood in front of her on the stairs trying to block her exit. Defendant was able to get into her vehicle and lock the doors. As she started the vehicle, defendant called Ms. Steele and told "her I had to go, I was going, please just pick me up. I was going to go a little ways, just pick me up." Ms. Steele said to "just stop and pull over" and she would pick her up. Ms. Steele suggested that defendant drive "a couple of blocks" and wait for her to arrive. When she called Ms. Steele, defendant was "very upset and scared" and "didn't know what to do." Although Mr. Cayson had not assaulted her on this occasion, defendant was "in fear for her safety" because she had "seen it before." She "didn't want to hang around [Mr. Cayson's residence] to see what was going to happen next" and intended to "go a couple of blocks down and have [Ms. Steele] pick [her] up."

Ms. Steele testified that she and defendant had been friends for 28 years. She described Mr. Cayson as "great when he's not impaired," but said that when he drank he "gets very agitated" and was likely "to fight and to bow up." When defendant began dating Mr. Cayson, Ms. Steele was "very concerned for her safety." She recalled the incident in which Mr. Cayson "pushed [defendant] into a car." On the night that defendant called 911 and Officer Baize brought defendant to her house, defendant's shirt was torn and she "had marks on her neck" and appeared "terrified." Defendant obtained a restraining order the following day. On the night that defendant was arrested for impaired driving, she called Ms. Steele and said that "she had been at [Mr. Cayson's residence] and that she was scared and he was angry." Ms. Steele told defendant to "get far enough away from him, pull over to the side of the road, take the keys out of the ignition" and wait for her. Ms. Steele believed that defendant needed to "get out of the situation immediately for her safety," and that defendant's driving a few blocks away "was the only safe option." Within a "matter of minutes" defendant was stopped by officer Mobley, before Ms. Steele had time to get dressed and get into her vehicle.

On 23 July 2013 the jury returned a verdict of guilty of driving while impaired. The trial court sentenced defendant to a

term of 60 days, which was suspended on the condition that defendant be placed on twelve months of unsupervised probation.

Defendant appeals.

## II. Analysis

### A. Standard of Review

Defendant argues on appeal that the trial court erred by denying her request for a jury instruction concerning necessity as a defense to the charge of driving while impaired. We agree.

"The law is well settled that a judge is required to instruct on all substantial features of the case. . . . Where an instruction is requested by a party, and where that instruction is supported by the evidence, it is error for the trial court not to instruct in substantial conformity with the requested instruction." *State v. Rose*, 323 N.C. 455, 458, 373 S.E.2d 426, 428 (1988) (citing *State v. Earnhardt*, 307 N.C. 62, 296 S.E. 2d 649 (1982), and *State v. Hairr*, 244 N.C. 506, 94 S.E. 2d 472 (1956)). "[I]t is equally settled that defenses raised by the evidence constitute substantial features requiring an instruction." *State v. Jones*, 300 N.C. 363, 366, 266 S.E.2d 586, 587 (1980) (citing *State v. Dooley*, 285 N.C. 158, 203 S.E. 2d 815 (1974)).

Necessity has long been recognized as a "defense that confesses the act charged, and seeks to avoid the consequences

by showing some excuse recognized by the law as sufficient to relieve it of its criminal character." *State v. Rogers*, 119 N.C. 793, 794, 26 S.E. 142, 142 (1896). "The violation of the letter of the law has been excused in criminal cases generally on no other ground except that a human being was thereby saved from death or peril, or relieved from severe suffering." *State v. Brown*, 109 N.C. 802, 807, 13 S.E. 940, 942 (1891) (citations omitted).

## B. Discussion

In *State v. Hudgins*, 167 N.C. App. 705, 606 S.E.2d 443, (2005), the defendant appealed from convictions of habitual driving while impaired and driving while license revoked. At trial, the defendant presented evidence that he had driven in order to bring a runaway truck under control. This Court held "that the defense of necessity is available in a DWI prosecution" and that a "defendant must prove three elements to establish the defense of necessity: (1) reasonable action, (2) taken to protect life, limb, or health of a person, and (3) no other acceptable choices available." *Hudgins*, 167 N.C. App. at 710-711, 606 S.E.2d at 447 (citing *State v. Thomas*, 103 N.C. App. 264, 265, 405 S.E.2d 214, 215 (1991)). We ruled that the defendant was entitled to a new trial based on the trial court's failure to instruct concerning the defense of necessity.

We reach the same result in the present case. The evidence pertinent to the defense of necessity included the following:

1. Officer Baize responded to a 911 call from defendant about three weeks before her arrest; on that occasion, defendant's shirt was torn, and she was upset and appeared frightened of Mr. Cayson.

2. Defendant testified that (a) on a number of prior occasions Mr. Cayson had physically assaulted her after drinking alcohol, (b) she had learned to recognize the warning signs of an impending attack, (c) on the night of her arrest she drove away from Mr. Cayson's house because she was afraid for her safety, and (d) she called Ms. Steele when she got into her car and arranged for Ms. Steele to pick her up as soon as she had driven a safe distance from Mr. Cayson.

3. Defendant was stopped by Officer Mobley within five minutes of leaving Mr. Cayson's house, and just a few blocks from that location. There is no evidence that she had driven any great distance, or that she intended to do so.

4. When Officer Mobley stopped defendant, she was crying and upset, and immediately told him that she "didn't want to be driving" and was only driving to "get away from [Mr. Cayson]."

5. Ms. Steele testified that defendant had called her on the night of her arrest, that Mr. Cayson had engaged in physical violence against defendant, and that she believed defendant's only reasonable way to protect herself on the night she was arrested was to drive a few blocks away and wait for Ms. Steele to pick her up.

We hold that the evidence was sufficient to require an instruction on the defense of necessity, and that the trial court erred by denying defendant's request for the instruction. In reaching this conclusion, we have considered and ultimately rejected the State's arguments for a contrary result.

During the charge conference, the trial court indicated that it was denying defendant's request because the court believed that, at the time defendant drove away from Mr. Cayson's house, she had a reasonable alternative available of dialing 911 and waiting for the arrival of law enforcement officers. In making this determination, the trial court was necessarily resolving issues of fact regarding the credibility of defendant's evidence, the degree of immediate danger presented by Mr. Cayson, and the likelihood of her being assaulted while she waited for law enforcement officers to respond to her call. In *Hudgins*, we emphasized that factual determinations pertinent to the defense of necessity were in the purview of the jury:

> Although the State argues that defendant's testimony was "an elaborate fabrication," that argument presents a question of credibility that is solely within the purview of the jury. "All defenses presented by the defendant's evidence are substantial features of the case, even if that evidence contains discrepancies or is contradicted by evidence from the state. This rule reflects the principle in our jurisprudence that it

> is the jury, not the judge, that weighs the evidence." . . . Whether jumping into the truck to attempt to stop the vehicle was reasonable under the circumstances and whether defendant had any other acceptable options were questions for the jury. The State argues that . . . there was no need for defendant to get behind the wheel. It was, however, up to the jury to decide whether the situation involved a split-second decision in an emergency situation that rendered defendant's actions reasonable and necessary.

*Hudgins* at 711, 606 S.E.2d at 447-48 (quoting *State v. Norman*, 324 N.C. 253, 267, 378 S.E.2d 8, 17 (1989) (Martin, J., dissenting) (internal citation omitted)). Similarly, in the present case the factual issues for the jury's determination included the credibility of the witnesses and whether the believable evidence established the elements of the defense of necessity. We also conclude that it was a question of fact for the jury whether defendant's driving two and a half blocks after Officer Mobley turned on his blue light constituted impaired driving that was not excused by any necessity, or whether defendant was simply finding the nearest safe place to pull off the road.

Finally, we do not agree with the State that the result in this case is controlled by *State v. Cooke*, 94 N.C. App. 386, 380 S.E.2d 382 (1989). In *Cooke*, the defendant was stopped by police after "he had been driving on different public highways for

about thirty minutes." We held that although the "evidence tends to show that defendant was justifiably in fear for his safety when he drove away from his pedestrian pursuers," there was no evidence that "he was still justifiably fearful thirty minutes later after his pursuers had been left many miles behind." *Cooke*, 94 N.C. App. at 387, 380 S.E.2d at 382. In this case, defendant was stopped by Officer Mobley about three blocks from Mr. Cayson's house and within five minutes of leaving. *Cooke* is factually distinguishable and does not control the outcome of the present case.

We hold that the trial court erred by denying defendant's request that the jury be instructed on the defense of necessity, and that defendant is entitled to a new trial.

NEW TRIAL.

Judges McGEE and ERVIN concur.

Report per Rule 30(e).