INMAN, Judge.
Defendant Tyrone Badson appeals the judgment entered after a jury found him guilty of driving while impaired ("DWI"). Defendant contends that the trial court erred by refusing to instruct the jury on the defense of necessity.
After careful review of the record, which does not include evidence sufficient to support essential elements of the necessity defense, we conclude that defendant's trial was free of error.
Factual and Procedural Background
On 24 March 2012, defendant, who had recently moved to Raleigh, went to a pool hall in Cary. According to his trial testimony, after a few drinks, defendant started to feel ill. A man with whom defendant was playing pool offered to give him a ride home. Defendant was reluctant to leave his car at the pool hall, but the man told him that he would drive defendant's car to defendant's house and have a friend pick him up. Defendant agreed. Although defendant was not sure of the exact time that they left the pool hall, it was sometime after midnight.
Defendant testified that, during the ride home, he began feeling "worse" and fell asleep in the passenger seat. When he awoke, he did not recognize the surroundings and began to get "nervous because it was taking longer than what [he] thought it should take to get to [his] house." According to defendant, the man told defendant to "just chill" and began to touch defendant's leg. Despite the fact that he felt extremely "weak" and "dizzy," defendant opened his car door and attempted to jump out; however, the man pulled him back into the car, and an altercation ensued. Defendant remembers seeing the man reach for something before he pepper sprayed defendant.
Defendant further testified as follows: When he felt the car slow down, defendant was able to get out of the car. The man followed, and they fought on the roadside. Eventually, defendant managed to get back in the car alone and lock the doors. The man began "banging" on the window in an attempt to get back in defendant's car. Unsure of whether the man would be able to break the window, defendant slid into the driver's seat and drove away because he was "scared of what was going to happen to [him]." Defendant did not remember hitting anything with his car that night, but he did remember the airbags deploying while he was driving. After the airbags deployed, defendant saw police lights flashing.
Officer M. Donley ("Officer Donley") with the Raleigh Police Department testified that he was working as a patrol officer during the early morning of 24 March 2012. Around 3:30 a.m., dispatch notified him that a caller had reported seeing an accident at in the intersection of Wade Avenue and Faircloth. The caller reported that there was a "black male rolling around on the ground beside his car" and that his car appeared to have substantial damage. Officer Donley began driving to the scene, and, as he approached the intersection, dispatch reported that defendant had gotten back in his car and was driving toward Officer Donley on Wade Avenue.
Officer Donley saw defendant's car coming towards him. As he got closer, Officer Donley saw defendant sitting up against the steering wheel, attempting to keep his eyes open to drive. Defendant's vehicle swerved toward Officer Donley, and Officer Donley testified that defendant's eyes were "pretty swollen" and that he had "mucus or snot" all over his nose and face. Officer Donley got behind defendant's car and pulled defendant over. Defendant's car had sustained "heavy front damage" and the bumper was hanging in front of the car. It appeared to Officer Donley that defendant had hit something with his car.
Defendant immediately exited his vehicle and told Officer Donley: "I've been sprayed." Officer Donley noticed an orange spot on defendant's shirt which was consistent with pepper spray. As he got closer, Officer Donley "started coughing" and he quickly deduced that defendant had been sprayed with pepper spray. Officer Donley testified that he was familiar with pepper spray based on his training at the Police Academy. Defendant told Officer Donley that he had been at a club earlier in the night before going to an apartment with another man, who defendant called "his friend," on Wayne Street, but defendant refused to identify the man. Defendant said that his friend was driving the car and that, while he was driving, the two got into an argument. Defendant told Officer Donley that his friend sprayed him with pepper spray because defendant was unwilling to perform a sexual act with him. Officer Donley estimated that Wayne Street was approximately four or five miles from where defendant was eventually stopped on Wade Avenue.
Inside defendant's car, all of the airbags were deployed, and Officer Donley could still smell the gas released upon deployment. On the driver's airbag, Officer Donley noticed an orange stain. Officer Donley did not see any orange stains on the passenger side of the car nor did he find a canister of pepper spray in defendant's car. Other than defendant's symptoms associated with the pepper spray, Officer Donley did not notice any other injuries on defendant. When Officer Donley asked defendant whether he had hit anything that night with his car, defendant replied that "he did not know." Based on defendant's statement that he had just come from an apartment on Wayne Street, six police officers drove the route in various ways to see if they could find any evidence of what defendant had hit with his car. They also drove around the neighborhoods near Faircloth and Wade Avenue, the area where defendant was stopped. However, they did not see any damaged property or anyone walking who could possibly be the man with whom defendant had been fighting. Based on the concentration of pepper spray on the driver's side of the vehicle and the absence of any pepper spray on the passenger side, Officer Donley believed that defendant had been driving at the time he was sprayed.
Officer Donley detected alcohol on defendant's breath, but before he conducted any field sobriety tests, he took defendant to a fire station to wash off the pepper spray. Based on his belief that defendant was appreciably impaired, Officer Donley placed defendant under arrest and took him to the Wake County Detention Center for defendant to blow into an Intoximeter. Defendant blew a 0.18 on the breathalyzer.
During the jury charge conference, defense counsel requested that the jury be instructed on the defense of necessity using pattern jury instruction 310.10. The trial court asked whether defense counsel had given notice of the affirmative defense; defense counsel replied that he had not. The State indicated that it was "strongly opposed" to an instruction on necessity. Judge Morgan declined to give the instruction because the State was not given notice of the defense.
On 27 February 2014, the jury found defendant guilty of DWI. The trial court sentenced defendant to 60 days of imprisonment but suspended his sentence and placed him on 24 months of supervised probation. Defendant filed a notice of appeal on 10 March 2014.
Defendant's Notice of Appeal
Although defendant filed a handwritten notice of appeal on 10 March 2014 in Wake County Superior Court, it does not appear from the record that defendant served a copy of the notice on the State in violation of Rule 4(a)(2) of the North Carolina Rules of Appellate Procedure. However, defendant has filed a petition for writ of certioraripursuant to Rule 21 which we, in our discretion, grant.
Analysis
Defendant argues that the trial court erred by refusing to instruct on the defense of necessity because: (1) defendant was not required to give notice that he intended to rely on the defense at trial, and (2) he presented substantial evidence to support the requested jury instruction. While we agree that defendant was not required to give pretrial notice of his intent to seek the affirmative defense of necessity, we conclude that the evidence was insufficient to warrant the instruction.
Although the defenses of duress and necessity were "historically distinguished" under common law, "[m]odern cases have tended to blur the distinction[.]" State v. Monroe,--- N.C.App. ----, ----, 756 S.E.2d 376, 378 (2014). Thus, for purposes of this opinion, the two defenses are discussed interchangeably.
Section 15A-905(c) (2013) provides that a defendant must provide the State with notice of its intent to seek the defense of, among other things, duress. However, section 15A-905 is under Article 48, which is referenced as "Discovery in the Superior Court." This Court has held that Article 48 of our statutes applies only to cases within the Superior Court's original jurisdiction. State v. Fuller,176 N.C.App. 104, 108, 626 S.E.2d 655, 657 (2006). However, for cases where the District Court has original jurisdiction, including defendant's DWI case, seeN.C. Gen.Stat. § 7A-272, the discovery statutes do not apply, Fuller,176 N.C.App. at 107-108, 626 S.E.2d at 657. Consequently, defendant was not required to give notice that he intended to seek the affirmative defense of duress or necessity, and the trial court erred by refusing to instruct on this basis.
Despite the trial court's improper basis for declining to give the instruction, we still must determine whether there was substantial evidence of each element of the defense, because the trial court is only required to instruct on a requested instruction if it is supported by the evidence. State v. Hudgins,167 N.C.App. 705, 709, 606 S.E.2d 443, 447 (2005). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." State v. Smith,300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980).
"[T]he defense of necessity is available in a DWI prosecution." Hudgins,167 N.C.App. at 710, 606 S.E.2d at 447. "A defendant must prove three elements to establish the defense of necessity: (1) reasonable action, (2) taken to protect life, limb, or health of a person, and (3) no other acceptable choices available." Id.at 710-11, 606 S.E.2d at 447. "[T]o constitute a defense ... the coercion or duress must be present, imminent or impending, and of such a nature as to induce a well-grounded apprehension of death or serious bodily harm if the act is not done."State v. Kearns,27 N.C.App. 354, 357, 219 S.E.2d 228, 230-31 (1975). "In order to have the court instruct the jury on [a] defense, the defendant must present some credible evidence on every element of the defense." State v. Sanders,201 N.C.App. 631, 635, 687 S.E.2d 531, 535 (2010). However, "a defense of duress cannot be invoked as an excuse by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm." State v. Smarr,146 N.C.App. 44, 55, 551 S.E.2d 881, 888 (2001) (internal quotation marks omitted). To determine whether the trial court erred by refusing to instruct on the defense of duress, the evidence must be viewed in a light most favorable to the defendant. Sanders,201 N.C.App. at 635-36, 687 S.E.2d at 535-36.
In support of its argument that the evidence was insufficient to warrant the instruction, the State relies on this Court's decision in State v. Cooke,94 N.C.App. 386, 380 S.E.2d 382 (1989). In Cooke,the defendant was convicted of DWI. Id.at 380 S.E.2d at 382. On appeal, he argued that the jury should have been instructed on the defense of duress because he presented substantial evidence that he did not have any other reasonable alternatives but to drive away from a party "because several irate people were chasing him on foot." Id.However, the defendant admitted that he had been driving on different roads for approximately 30 minutes before he was stopped by a police officer. Id.This Court rejected the defendant's argument, noting that
[w]hile this evidence tends to show that [the] defendant was justifiably in fear for his safety when he drove away from his pedestrian pursuers, it does not tend to show that he was still justifiably fearful thirty minutes later after his pursuers had been left many miles behind. The coercion defense cannot be invoked by one who had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily harm; and nothing in the record suggests that [the] defendant would have exposed himself to harm of any kind if he had stopped driving the car long before the officer saw him.
Id.(internal citations omitted).
Here, while the evidence supports a finding that defendant had "reasonable grounds to fear for his safety," State v. Brown,182 N.C.App. 115, 119, 646 S.E.2d 775, 778 (2007), based on the undisputed evidence showing that some sort of altercation had occurred that resulted in defendant being rendered almost incapacitated after being pepper sprayed, defendant offered no evidence showing that his actions were reasonable, that there were no reasonable alternatives, or that defendant was still "justifiably fearful," Cooke,94 N.C.App. at 387, 380 S.E.2d at 382, at the time he was stopped because it is unclear how far (in distance or time) defendant drove after the altercation ended. At trial, defendant repeatedly stated that he could not remember how far he drove after locking the assailant out of the vehicle. On appeal, defendant contends that he had only been driving on Wade Avenue from the intersection of Faircloth, the place where the caller reported seeing defendant "rolling" on the ground, to the intersection of Dixie Trail, the place where Officer Donley stopped him, and requests this Court take judicial notice of this distance, approximately .42 miles. However, while we can verify this information from the record, we cannot simply assume, without supporting evidence, that defendant began driving at the intersection of Faircloth and Wade Avenue. The caller did not indicate that he witnessed an altercation. The caller did not see any other people. Thus, there is no way to ascertain what happened immediately preceding what the witness saw in order to establish that defendant was not driving before the witness saw him "rolling" on the ground. Furthermore, physical evidence in the car does not support an inference that defendant was pepper sprayed while riding as a passenger in the car, as he testified, but rather suggests that defendant was driving the car when he was sprayed. Accordingly, we deny defendant's motion because there is no corroborating evidence to support a conclusion that the intersection of Wade Avenue and Faircloth was the place where defendant began driving.
Thus, based on the absence of any information about how far defendant actually drove, there is no way to determine the degree of danger defendant was facing at the time he was stopped nor is it ascertainable whether he had reasonable alternatives other than driving. Consequently, we find this case analogous to Cookebecause we cannot say that defendant was still "justifiably fearful," 94 N.C.App. at 387, 380 S.E.2d at 382, at the time he was stopped given the complete lack of evidence establishing how long defendant drove after he was able to lock the assailant, who was also on foot, out of the car and drive away. Moreover, without this information, we cannot say that defendant did not have any reasonable alternatives other than to continue driving once he got a safe distance away from the man. Thus, as in Cooke, id.,"nothing in the record suggests that defendant would have exposed himself to harm of any kind if he had stopped driving the car long before the officer saw him." This is especially true in defendant's situation since, at the time Officer Donley stopped him, defendant's car had sustained heavy damage as the result of some type of accident to such an extent that defendant's airbags had deployed. Therefore, the absence of any information as to how far defendant drove means that there are no factual issues for the jury to resolve.[1]
In sum, even construing the evidence in a light most favorable to defendant, defendant still has the burden of providing credible evidence on every element of the defense of necessity in order to be entitled to the instruction. Sanders,201 N.C.App. at 635, 687 S.E.2d at 535. Without some testimony to support a conclusion that defendant drove only as far as necessary to get out of harm's way and seek help, defendant has failed to meet his burden, and defendant was not entitled to the instruction at trial.
Conclusion
Although the trial court's refusal to instruct on the defense of necessity based on defendant's failure to give pretrial notice that he intended to seek it was improper, the trial court did not err where the evidence was insufficient to warrant the instruction.
NO ERROR.
Judges BRYANT and DAVIS concur.
Report per Rule 30(e).
Opinion
Appeal by defendant from judgment entered 27 February 2014 by Judge Michael R. Morgan in Wake County Superior Court. Heard in the Court of Appeals 21 April 2015.

Defendant claims that the facts of this case "are virtually indistinguishable from the facts of" this Court's recent unpublished opinion in State v. Kapec, 2014 WL 2116530 (May 20, 2014) (COA13-1236). A review of Kapec discloses that, contrary to defendant's assertion, the facts are quite distinguishable from those in the instant case. Further, as an unpublished opinion, Kapec has no precedential value, Espinosa v. Tradesource, Inc., --- N.C.App. ----, ----, 752 S.E.2d 153, 165 (2013), and we decline defendant's request to consider it in support of his claim of error by the trial court.